**EUDALEY et ux. v. OCEAN ACCIDENT & GUARANTEE CORPORATION.**

**No. 7531.**

Circuit Court of Appeals, Fifth Circuit.

May 27, 1935.

E. J. Fountain, Jr., of Houston, Tex., and Lewis H. Follett, of Angleton, Tex., for appellants.

Albert P. Jones, of Houston, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The appellants, claiming under the Texas Compensation Law (Vernon's Ann. Civ. St. Tex. art. 8306 et seq.) for the death of their son from injury received in the course of his employment by Freeport Sulphur Company, were awarded nothing by the Industrial Accident Board, and sued in the state court to set aside the award. The suit was removed to the United States court and a verdict directed in favor of the insurer, who is the appellee, on the ground that the deceased was not employed in the usual business of his employer. The evidence is without conflict. The business of the Freeport Sulphur Company is the mining, shipping, and marketing of sulphur. In 1912 the city of Freeport was laid out by it, distant four miles from one mine and eighteen miles from another, 80 to 85 per cent. of its adult population being employed by the company. It was incorporated under the laws of Texas as a city of less than 5,000 people. The company had an office building in Freeport and a subsidiary corporation owned much of the city property. Buses were run by the company from the city to the mines to transport the laborers. On August 15, 1932, a hurricane greatly damaged the works at the mines and the dwellings in the city of Freeport, so that operations were shut down for some days. On August 17th, the city authorities not having cleaned the streets of debris, the company hired in Houston five or six large trucks and put some of its old employees and a force of others specially hired to clearing up the streets and alleys. Among the latter was the deceased, a youth of eighteen years. While at work in one of the alleys he stuck a nail in his foot and a few days later died of tetanus therefrom. The company had always followed a policy of making its workers comfortable and helping out their living conditions. It constantly hired a man to superintend the parks of Freeport, but did not clean up the streets. Doing this latter work after the hurricane would, how-

ever, tend to get the men back to their work sooner.

The suit is altogether based on the Workmen's Compensation Law. That law defines the protected employees thus: " 'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer." Rev. Civ. St. art. 8309. The deceased was in the service of Freeport Sulphur Company, but his employment was not in the usual course of its business, and he was not within the protection of the Compensation Law or of the insurance carried by its requirements. An insurer assuming liability for injuries to occur in a business is by this legislation held only for the risks in the usual course of that business. If the employer hires persons to do other work, they are not within the arrangements of the law. In Oilmen's Reciprocal Association v. Gilleland, 291 S. W. 197, the Commission of Appeals of Texas so construed the quoted provision, holding that the word "usual" in it must be given its natural force, and that a mason employed to wall a pit in which to install additional pumps for a laundry company was not engaged in the usual business of the laundry company. See, also, London & Lancashire, etc., Co. v. Industrial Accident Commission, 173 Cal. 642, 161 P. 2, where employing one to put out an accidental fire was held not to be in the usual course of the business of farming. Perhaps repairing the sulphur company's works after the ravages of the storm would be included in the usual course of its business, for though such a storm is unusual, repairs of some sort are regularly necessary. Compare Wells v. Lumbermen's Reciprocal Association (Tex. Com. App.) 6 S.W.(2d) 346. But it is no part of the company's business to clean up the streets of a municipal corporation. The exclusive control of the streets and the duty to repair and clean them is expressly put by law in the municipal authorities. Rev. Civ. St. art. 1016. While under the extraordinary circumstances following the storm the company may have thought it proper and profitable to do this work, those it hired to do it cannot be said to be employed in the usual course of the company's business.

An estoppel to deny that the deceased was insured is sought to be builded on the fact that his wages were reported to the appellee insurer and included in the basis for fixing the premium charge, and there has been no return of the resulting increase in premium since the insurer had knowledge of the facts. It is held that such considerations cannot impose liability to pay compensation under the statute in a case not covered by it. Southern Surety Co. v. Inabnit, 119 Tex. 67, 24 S.W.(2d) 375; Hill v. Georgia Casualty Co. (Tex. Com. App.) 45 S.W.(2d) 566. But no basis for such a contention exists here, because the policy is a double one, and not only insures employees for their compensation under the Compensation Law, but also indemnifies the employer against other liabilities for injury to employees, so that a premium may justly have been demandable on account of the deceased and others like him who were not under the Compensation Law, but might have had claims on account of their employer's negligence. No such claim is here set up.

No error appearing, the judgment is affirmed.