## TEXAS EMPLOYERS' INSURANCE ASSOCIATION V. CHARLES C. WRIGHT.

No. 6486.   Decided October 14, 1936.
Rehearing overruled November 12, 1936.
·   · (97 S. W., 2d Series, 171.

*James P. Swift,* of Dallas, for plaintiff in error.

Jurisdiction of the trial court in compensation matters depends on the amount of the claim made before the Industrial Accident Board and not upon the amount prayed for in plaintiff's petition, and therefore an allegation that "the cause of action involves more than $500.00" is subject to special exception, and the petition subject to general demurrer. Mingus v. Wadley, 115 Texas, 551, 285 S. W., 1084; Texas Emp. Ins. Assn. v. Nunamaker, 267 S. W., 749; Texas Ind. Ins. Co. v. Beall, 35 S. W. (2d) 1054.

*Webb & Webb,* of Sherman, for defendant in error.

The facts as disclosed by the record show that at the time of the injury plaintiff was engaged in the services of Diamond Mill & Elev. Co., within its usual course of business.

If the amount of the claim can be established from the facts herein set out, the claimant's petition would be sufficient and not subject to demurrer. Wells v. Lumbermen's Reciprocal Assn., 6 S. W. (2d) 346; Commercial Casualty Co. v. Strawn, 44 S. W. (2d) 805; Haynes v. Taylor, 35 S. W. (2d) 104.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Defendant in error, an employee of Diamond Mill and Elevator Company at the time he was injured, recovered judgment for $2925.00 against plaintiff in error, the insurer of the employer under the Workmen's Compensation Law. The judgment was affirmed by the Court of Civil Appeals. 56 S. W. (2d) 926. Writ of error was granted "on the dissenting opinion," in which the conclusion was expressed that the cause should be reversed and rendered because the employment of defendant in error at the time of his injury was "not in the usual course of trade, business, profession, or occupation of his employer."

Diamond Mill and Elevator Company at the time of defendant in error's injury and for a long time prior thereto was engaged in the business of milling and selling flour and feed, buying grain, milling it into flour, and selling the flour and feed. Defendant in error had worked for the mill and ele-

vator company for eight years. He was employed as a sweeper, but three weeks before his injury he was taken out of the mill and directed to assist in the construction of a sweet feed plant that the mill and elevator company was building. While carrying form steel to be used in the building he stepped in a mud hole and wrenched his back. The building under construction was a frame structure, 52 by 52 feet in dimensions, with basement and three floors. According to the testimony of defendant in error the usual course of business of the mill and elevator company was to buy grain, mill it into flour and sell the flour and feed, and it had never before built a sweet feed mill.

The policy of insurance was not offered in evidence. No proof of its terms was made other than a stipulation of counsel that at the time of the injury of defendant in error his employer had a policy of insurance in full force and effect under the compensation law with plaintiff in error.

■ As stated in the opinion of the Court of Civil Appeals, "the purpose of the compensation law is to provide speedy equitable relief to an employee injured 'in the course of his employment', or beneficiaries in case of his death." It is the "employee" to whom relief or compensation is given by the statute; and the word "employee" is thus defined in Section 1 of Article 8309:

" 'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

■ The usual trade or business of Diamond Mill and Elevator Company was, according to the undisputed evidence, the milling of grain and the selling of flour and feed, not the construction of buildings. Defendant in error's original employment as sweeper in the mill was in the usual course of such business, but it is the character of the work being done at the time of the injury and not the contract of employment that determines whether the employee is engaged in the usual course of the business. Wells v. Lumbermen's Reciprocal Association (Com. App.), 6 S. W. (2d) 346; Fidelity Union Casualty Co. v. Carey (Com. App.), 55 S. W. (2d) 795. Defendant in error at the time of his injury was working for the mill and elevator company and in accordance with its direction, but he was not engaged in the performance of work in the usual course of the

trade or business of the company. He therefore was not an employee within the statutory definition and is not entitled to compensation under the statute. To hold otherwise would be to ignore and give no effect to the word "usual" contained in the definition.

The case is ruled by Oilmen's Reciprocal Association v. Gilleland (Com. App.), 291 S. W., 197. While the opinion of the Commission of Appeals in that case was not expressly approved or adopted by the Supreme Court, the court in reversing the judgments of the trial court and the Court of Civil Appeals and rendering judgment for the plaintiff in error necessarily approved the conclusion expressed in the opinion of the Commission of Appeals that Gilleland when killed was not engaged in the usual course of his employer's business. There the employer operated a laundry and Gilleland was killed while working as a bricklayer constructing a wall for a pit in which the employer was about to install a pump for the purpose of pumping water to its laundry.

Wells v. Lumbermen's Reciprocal Association (Com. App.), 6 S. W. (2d) 346, did not overrule the Gilleland case but criticized it only to the extent that it seemingly approved a Pennsylvania case, Callihan v. Montgomery, 272 Pa., 56, 115 Atl., 889. Judge Leddy in writing the opinion in the Wells case carefully pointed out the difference in the facts of the two cases, showing that the employee in the Gilleland case was assisting in building an addition to the plant which would enlarge its facilities and that the company might have continued indefinitely to operate its laundry business without adding to or enlarging the capacity of its plant, and that in the Wells case the employee was engaged in making repairs to the machinery which was being used in the operation of the plant, which repairs were essential and necessary to the efficient operation of the existing business and were of such nature as would inevitably be required in the ordinary and usual operation of the plant.

The Gilleland case was followed in. Texas Employers' Insurance Association v. Sewell, 32 S. W. (2d) 262, in which the facts were very similar. Application for writ of error was refused. In Croswell v. Commercial Standard Insurance Co., 56 S. W. (2d) 918, the employer's business was manufacturing and selling sandwiches. An employee was injured while working in the construction of a building to be used in carrying on the business. The Court of Civil Appeals, following the Gilleland case, held that the employee was not working in the usual

course of the business of the employer and was not entitled to recover compensation from the employer's insurer. Application for writ of error was refused by the Supreme Court on the same day that the writ of error was granted in the instant case. The Gilleland case was followed by the United States District Court and the Circuit Court of Appeals in Morse v. New Amsterdam Casualty Company, 30 Fed. (2d) 974; Id., 37 Fed. (2d) 100.

The fact that Gilleland was not regularly employed by the laundry company but was called in for the particular purpose of walling up the pit, while defendant in error had been regularly employed in the usual business of the mill and elevator company prior to the time he was injured cannot serve to differentiate the two cases. The Texas Compensation Law since its amendment in 1917 has protected alike both casual and regular employees, provided the employment is in the usual course of the trade or business. Oilmen's Reciprocal Association v. Gilleland, supra; Wells v. Lumbermen's Reciprocal Association, supra. Compensation was denied in the Gilleland case because the employment was outside the usual course of the employer's business, not because it was casual.

The facts of the present case bring it clearly under the rule of the Gilleland case rather than that of the Wells case.

In Commercial Standard Insurance Co. v. De Hart, 47 S. W. (2d) 898, Texas Employers' Insurance Association v. Jenkins, 63 S. W. (2d) 563, and Texas Employers' Insurance Association v. Rogers, 70 S. W. (2d) 1007 (application for writ of error refused), compensation was awarded to employees injured in the remodeling or construction of buildings to be used by the employers in their usual business, but in each of the three cases the employer carried insurance which expressly protected its employees engaged in the work of remodeling or construction. There is no suggestion in the record that the policy issued to Diamond Mill and Elevator Company by plaintiff in error covered by its terms any other employees than those engaged in the usual or ordinary business of the company.

■ The decisions principally relied upon as supporting the opinion of the Court of Civil Appeals are cases in which the employee when injured was engaged in the performance of work which, while different from that ordinarily done by him, still was in the usual course of the employer's business. Such employment comes within the terms of the statutory definition.

An employee injured when performing at his employer's direction work outside the scope of his usual duty is entitled to compensation, provided the work in which he is engaged when injured is within the usual course of the employer's business. Commercial Casualty Insurance Co. v. Strawn, 44 S. W. (2d) 805 (application for writ of error refused); Constitution Indemnity Co. v. Shytles (U. S. C. C. A.), 47 Fed. (2d) 441; Note 33, A. L. R., pp. 1336-1338; Note 82, A. L. R., p. 1251 and following; Schneider's Workmen's Compensation Law (2d Ed.), Sec. 23, Vol. 1, p. 210. Work not usually performed by a particular employee may be either within or without the usual course of the employer's business. That in which defendant in error was engaged when injured was both unusual to him and outside the usual course of his employer's business.

■ Plaintiff in error presents an assignment complaining of the trial court's action in overruling its general demurrer to defendant in error's petition, the contention being that the petition is fatally defective in failing to allege that the amount involved in the claim before the Industrial Accident Board was in excess of $500.00. The Court of Civil Appeals in Texas Employers' Insurance Association v. Moore, 46 S. W. (2d) 404, held that a petition containing substantially the same allegations was good against general demurrer for two reasons: first, because it clearly appeared from the petition construed as a whole that the plaintiff's claim as made and acted upon by the Industrial Accident Board was for an amount in excess of $500.00; and second, because the identity of the injury received by the employee, for which he made claim before the Board, with the injury shown by his petition in the court on appeal, rather than the amount in dollars and cents of the claim as made before the Board, was the determining factor in fixing the jurisdiction of the court. The correctness of this decision was challenged by assignments in an application for writ of error granted by the Supreme Court, and it was held in an opinion by Judge Critz, Commissioner, adopted by the Court, that the Court of Civil Appeals had correctly disposed of the questions presented by the assignments. 123 Texas, 302, 70 S. W. (2d) 702. See, also, Beal v. Texas Indemnity Insurance Co. (Com. App.), 55 S. W. (2d) 801.

The judgments of the district court and the Court of Civil Appeals are reversed and judgment is here rendered for plaintiff in error.

Opinion adopted by the Supreme Court October 14, 1936.

Rehearing overruled November 12, 1936.